# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| Massachusetts Mutual Life Insurance Company, | ) ) | Civil Action No.: 6:16-cv-01643-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| Randall S. Hiller and A.E. Pennebaker Co., Inc., | ) ) ) | |
| Defendants, | ) ) | |
| Randall S. Hiller, | ) ) | |
| Cross-Plaintiff, | ) ) | |
| v. | ) ) | |
| A.E. Pennebaker Co., Inc., | ) ) | |
| Cross-Defendant. | ) ) | |

This matter is before the court on competing Motions for Partial Summary Judgment by Cross-Plaintiff Randall S. Hiller ("Hiller") and Cross-Defendant A.E. Pennebaker Co., Inc. ("Pennebaker"). (ECF Nos. 23, 35.) For the following reasons, the court **DENIES** Pennebaker's Motion for Partial Summary Judgment (ECF No. 23), and **DENIES** Hiller's Motion for Partial Summary Judgment (ECF No. 35).

## I.    JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between Plaintiff Massachusetts Mutual ("MassMutual") and Defendants Pennebaker and Hiller. (ECF No. 1 at 2.) The amount in controversy exceeds $75,000. (*Id.*) This court retains jurisdiction over an interpleader insurance case, even if the cross-complaining parties lack subject

matter jurisdiction, as long as the original plaintiff and defendants had subject matter jurisdiction. *Leimbach v. Allen*, 976 F.2d 912, 917 (4th Cir. 1992).[1]

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Pennebaker is a small family-owned corporation. (ECF No. 23-1 at 2.) After several decades of being an independent manufacturer's representative, Mr. A.E. Pennebaker, under his corporate name, Pennebaker, began factoring accounts. (*Id*.) Factoring is the buying of unpaid invoices at a discount and collecting the sums due under the invoices. (*Id*.) Therefore, the seller, in need of the payments more quickly than the invoice terms provide, would receive money instantly from Pennebaker for invoices that would not be due for another 30, 60, or 90 days. (*Id*.)

In the late 1970s, Mr. A.E. Pennebaker's son, Edward C. Pennebaker, began operating Pennebaker. (ECF No. 23-4 ¶ 11.) One of the factoring customers was Durham Mechanical Contractors, Inc. ("Durham"). (*Id* ¶ 12.) Carla Durham was a principal of Durham. (*Id*. ¶ 13.) Unbeknownst to Mr. A.E. Penenbaker, Ed Penebaker, or Pennebaker, Durham began having severe financial difficulties. (*Id*. ¶ 14.)

Durham began a fraudulent scheme wherein it would present for payment invoices to Pennebaker. (*Id*. ¶ 15.) These were fraudulent invoices that were on jobs that did not exist, for labor that was not expended, and material that was not used. (*Id*.) Pennebaker paid many fraudulent invoices until the scheme unraveled and came to light. (*Id*. ¶ 16.) In an effort to resolve the situation, it was agreed between Pennebaker and Durham that Durham would purchase life insurance policies covering the lives of its three principals, including Carla Durham. (*Id*. ¶ 17;

---

[1] MassMutual has been partially discharged from this case (ECF No. 54), but the court retains jurisdiction.

ECF No. 23-5.)  The policies were purchased from MassMutual.  (*Id*.)  For purposes of this action, only the Carla Durham policy is at issue.

In 1986, MassMutual issued policy number xxxx005, a term life insurance policy insuring the life of Carla Durham.  (ECF No. 1 ¶ 10.)  According to counsel for MassMutual, the materials relating to this policy were destroyed in the normal course of business in accordance with MassMutual's document retention policies on September 1, 2010, due to its cancellation and the issuance of its replacement as explained below.  (ECF No. 23-6.)  Therefore, it is unclear who the beneficiary was at the time of the issuance.

On December 5, 1986, policy number xxxx005 was assigned to Pennebaker.  (ECF No. 23-3.)  On May 3, 1994, the beneficiary was changed to Hiller.  (ECF No. 23-7.)  Shortly thereafter, MassMutual's records indicate that Durham attempted to cancel the policy, but in denying this request, MassMutual identified that it had a legal obligation to recognize the rights of the assignee.  (ECF No. 23-8.)

On or about October 15, 1996, Pennebaker submitted to MassMutual an application to convert the term policy number xxxx005 to a whole life insurance policy.  (ECF No. 1 ¶ 13; ECF No. 23-9.)  On October 18, 1996, in response to the October 15, 1996 application, MassMutual issued policy number xxxx889 ("Policy"), a whole life insurance policy with a face value of $175,000, insuring the life of Carla Durham.  (ECF No. 1 ¶ 14.)  The Policy also includes a Life Insurance Supplemental Rider with a value of $175,000.  (*Id*.)  Policy number xxxx889 replaced policy number xxxx005.  At the time of issuance, MassMutual's records indicate that the owner of the Policy was the insured, Carla Durham, the assignee of the Policy was Pennebaker, and the primary beneficiary of the Policy was Hiller.  (*Id*. ¶ 15.)  Although MassMutual's records are unclear, Pennebaker paid the Policy premiums until at least 2003.  (ECF No. 23-9.)

On January 12, 1990, a Decree of Foreclosure was entered by the Greenville County Master in Equity, ordering that Pennebaker was entitled to have its notes and mortgages foreclosed and the encumbered premises sold, with the proceeds applied toward the judgment. (ECF No. 23-4 ¶ 19.) The Master in Equity entered judgment against Clause F. Durham, Carla Durham, and Clause Anthony Durham in the amount of $1,010,969.45. (*Id.* ¶ 20.) After the judgment was entered, no money was realized towards the debt from the sale of the properties because the real estate was already underwater. (*Id.* ¶ 21.)

Carla Durham died on April 29, 2015, in Greenville County, South Carolina. (ECF No. 1 ¶ 16.) At the time of Carla Durham's death, the owner of the Policy was Carla Durham, the assignee of the Policy was Pennebaker, and the primary beneficiary of the Policy was Hiller. (*Id.* ¶ 17-18.)

On or about February 11, 2016, Hiller submitted a Life Insurance Claim Form to MassMutual requesting the life insurance proceeds due under the Policy be paid to him in full. (*Id.* ¶ 19.)

On May 12, 2016, Pennebaker, through counsel, put MassMutual on written notice that it had a duty to pay the Policy proceeds to it immediately. (ECF No. 23-13.) According to MassMutual, the death benefit due under the Policy is $231,306.90. (ECF 23-1 at 4.)

On May 20, 2016, MassMutual filed a Complaint for Interpleader against Hiller and Pennebaker, alleging competing claims to the proceeds of the life insurance Policy insuring the life of Carla D. Durham. (ECF No. 1.) MassMutual claims that it is in doubt as to which Defendant is entitled to payment of the Policy proceeds. (ECF No. 1 ¶ 23.)

On October 20, 2016, Pennebaker filed a Motion for Partial Summary Judgment, asserting it was entitled to the proceeds of the life insurance Policy. (ECF No. 23.) On November 2, 2016,

Hiller filed a response in opposition to Pennebaker's Motion. (ECF No. 28.) On November 11, 2016, Pennebaker filed a Reply to Hiller's response. (ECF No. 32.)

On November 15, 2016, Hiller filed a Motion for Partial Summary Judgment, asserting it was entitled to the proceeds of the life insurance Policy. (ECF No. 35.) On November 29, 2016, Pennebaker filed a response in opposition to Hiller's Motion. (ECF No. 37.)

### III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The movant bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this threshold showing has been made, the non-moving party cannot survive summary judgment by resting on the allegations in the pleadings. Rather, the non-moving party must provide specific, material facts giving rise to a genuine issue. *See id*. at 324. Under this standard, the mere scintilla of evidence is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 255 (1986).

# IV.  ANALYSIS

## A.  The Assignee and Beneficiary Documentation

Hiller asserts that his status as a policy beneficiary is superior to that of an assignee.  (ECF No. 7 ¶ 29.)  The court does not agree.  When an insured assigns the proceeds of a life insurance policy as a security for a debt, the rights of the creditor are superior to that of the beneficiaries. *Unum Life Ins. Co. of Am. v. Witt*, 83 F. Supp. 3d 687, 690 (W.D. Va. 2015); *see also Cook v. Commercial Cas. Ins. Co.*, 160 F.2d 490, 492 (4th Cir. 1947) ("The question is not one of changing the designated beneficiary of an insurance policy, but of the assignment by an insured of his rights under a policy payable to his estate.  It is well settled that such rights may be assigned and the assignment operates to transfer to the assignee all rights in the insurance money payable in case of death."); *Antley v. N.Y. Life Ins. Co.*, 139 S.C. 23 (1927) ("[T]he insured had the absolute, unquestioned right to assign the policy and to subject the interest of the beneficiary thereto."); *Ex parte Boddie*, 200 S.C. 379 (1942) ("The property of a deceased person is liable for the payment of his debts, and such debts must be paid before the heirs or devisees are entitled to it.").  This is also stated in the policy itself.  (ECF No. 23-14.)  "This policy may be assigned . . . [T]he rights of the Owner and the interest of any Beneficiary or any other person will be *subject* to the assignment."  (*Id.*) (emphasis added).

Additionally, Hiller asserts that Carla Durham did not execute the assignment to Pennebaker.  (ECF No. 35-1.)  Upon review of the documentation MassMutual produced, there are nine copies of executed assignments to Pennebaker, some of which appear to be duplicates.  (ECF Nos. 32-1, 32-2.)  Four of the nine signature pages are executed by Carla Durham, and the other five are executed by Claude Durham.  (*Id.*)  However, the court acknowledges that Carla Durham's assignment of her life insurance Policy is not signed by her, but instead by Claude

6

Durham.  (*Id*.)  The court also acknowledges that on the beneficiary page, which names Hiller as the beneficiary of Carla Durham's Policy, it is not signed by Carla Durham, and the second page is signed only by Claude Durham.  (ECF No. 32-3.)

Therefore, the court finds that there is a genuine issue of material fact as to the documentation of the assignee and the beneficiary paperwork.

## B.  Insurable Interest Defense

Hiller asserts that Pennebaker lacks an insurable interest because the statute of limitations has passed on Pennebaker's debt.  (ECF No. 35-1 at 3.)  The court discusses the statute of limitations argument in the next section, but acknowledges here that Hiller's argument is flawed.

Hiller concedes that Carla Durham had a right to insure her own life.  *See Bynum v. Prudential Ins. Co. of Am.*, 77 F. Supp. 56, 59 (D.S.C. 1948) (stating that every person has an insurable interest in his or her own life).  However, Hiller then cites South Carolina case law which he claims stands for the proposition that South Carolina requires an insurable interest both at the time the policy is issued and at the time of the loss.  (ECF No. 35-1 at 3.)  This is true, but as to the *insured*.  *Powell v. Ins. Co. of N. Am.*, 285 S.C. 588, 590 (Ct. App. 1985).  "In order to recover on a policy of insurance, *the insured* must prove an insurable interest in the property both at the time the policy is issued and becomes effective and at the time of the loss."  *Id*. (emphasis added). Therefore, one can insure his own life for the benefit of anyone, regardless of whether that beneficiary has an insurable interest in the insured's life.  *Chapman v. Scott*, 234 S.C. 469, 471 (1959).

Moreover, a defense of lack of insurable interest can only be raised by the insurer.  *Bynum*, 77 F. Supp. at 60.  "When an insurance company pays the proceeds of a policy issued by it into the court to abide by the judgment of the court as between conflicting claimants, none of the

claimants to the fund is allowed to raise the objection that the beneficiary named in the policies has no insurable interest." *Id.* No such issue has been raised by MassMutual. Therefore, Hiller has no standing to raise an insurable interest defense.

### C. Statute of Limitations

Hiller has alleged that Pennebaker's debt is barred by the applicable statute of limitations. (ECF No. 35-1 at 4.) However, a contractual assignment of life insurance policy proceeds is the basis of Pennebaker's claim, not the thirty-year-old loan notes and security agreements. (ECF No. 23-1 at 8.)

"When applicable, the bar of a statute of limitation does not extinguish a creditor's underlying right to payment, but it does cause the remedy – enforcement of the right to payment – to be withheld. *In re Mazyck*, 521 B.R. 726, 730 (Bankr. D.S.C. 2014); *see also Weems v. Carter*, 30 F.2d 202, 204 (4th Cir. 1929) ("The distinction drawn by the great weight of authority is that the running of the Statute of Limitations extinguishes the remedy, but not the right of the creditor."). In *TranSouth Fin. Corp. v. Cochran*, the South Carolina Court of Appeals held that a guarantor's liability on a confession of judgment is an independent contractual obligation apart from the debt guaranteed, and therefore it survived the expiration of the confession of judgment. 324 S.C. 290, 296 (Ct. App. 1996). Thus, the court finds that the statute of limitations does not bar collection on the assignment of the insurance proceeds given as collateral, even though a separate action on the underlying debt is barred.

### D. Durham's Bankruptcy

In Hiller's Motion, he asserts that the assignment was discharged in Durham's bankruptcy. (ECF No. 35-1 at 4.) However, "the law is well settled that a lien passes through bankruptcy despite discharge unless voided by a plan or court order." *In re Washington*, 529 B.R. 654, 663

(Bankr. D.S.C. 2015). There is no evidence of a plan or court order stating to the contrary in this case. Therefore, the court finds that Durham's bankruptcy did not discharge the assignment.

The court concludes that the only genuine dispute of material fact that exists pertains to the documentation of the assignee and the beneficiary paperwork.

## V. CONCLUSION

For the foregoing reasons, the court **DENIES** Pennebaker's Motion for Partial Summary Judgment (ECF No. 23), and **DENIES** Hiller's Motion for Partial Summary Judgment (ECF No. 35).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 29, 2017
Columbia, South Carolina